The Full Commission has reviewed the prior Opinion and Award based on the record of the proceedings before Deputy Commissioner Kim L. Cramer and the briefs and arguments on appeal. The appealing party has not shown good ground to receive further evidence or to amend the prior opinion and award. Accordingly, after reviewing the evidence of record, the Full Commission affirms the Deputy Commissioner's decision and enters the following Opinion and Award.
 ************
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing on September 25, 1995 as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. All parties are properly before the Commission and the Commission has jurisdiction of the parties and of the subject matter.
3. An employee-employer relationship existed between plaintiff and defendant-employer on May 22, 1995.
4. Defendant-employer was self-insured with Kemper Risk Management as adjusting agent on May 22, 1995.
5. A Baxter Physical Examination and Health Status Report, a Chronological Employee Health Record, a referral for EMG/NCS of Dr. Andrea Stutesman, medical records of Dr. James Stutesman, Fry Regional Medical Center Same Day Surgery Physician's Orders and Consent to Operation form, Letter of Dr. Andrea Stutesman dated 8/1/95, Physician's Statement of Dr. Catherine Yeagley, Letter of Dr. Andrea Stutesman dated 11/8/95, Baxter Attendance Record for Edie Jones, Handwritten note dated 2/8/96, Personnel Change Notice dated 3/13/96, CNA Summary of Short Term Disability Benefits, Baxter speed Letters of 4/5/96, 6/14/95, and 8/16/95, Form 22 Wage Chart were all submitted into evidence without further authentication.
6. The issues to be determined by the Commission are:
 a. Whether plaintiff has sustained a compensable occupational disease as a result of her employment with defendant; and
b. If so, what are the compensable consequences?
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. Plaintiff is a female who was born on August 27, 1976. She is a high school graduate.
2. Plaintiff began working for defendant-employer through a temporary service in November 1994 as a dry filling operator. She was hired as a full time employee by defendant-employer in February 1995. Plaintiff was given a physical examination by Charlene Freeman, R.N., which included various hand motions. This examination indicated no significant medical impairment. Shortly thereafter, plaintiff was moved to the position of wet filling operator.
3. In her original position as a dry filling operator, plaintiff performed several different tasks. She rotated between four stations, performing tasks at each one for approximately five to seven minutes per station. These tasks included putting tips on IV bags, placing the bags in pouches and setting them on a conveyor belt.
4. Plaintiff's position as a wet filling operator consisted of three stages: Printing IV bags, filling and plugging these bags, and doing roll outs, where defective bags were removed. Plaintiff was required to fill at least 18 bags per minute, and generally did 20 to 24 per minute. Although this position involved repetitive hand motions, the evidence does not establish that forceful gripping was required.
5. Sometime during early 1995, no later than March, plaintiff began a weight training program. This program included upper body exercises such as shoulder presses and chest presses.
6. During her employment with defendant in the spring of 1995, plaintiff was also using birth control pills. Despite the use of these contraceptives, plaintiff became pregnant around April or May. However, unaware that she was pregnant, she continued on the birth control pills during the early months of her pregnancy.
7. On May 22, 1995, plaintiff reported to the plant nurse with complaints of right hand numbness that had been going on for a few weeks. She returned on June 14, 1995, with complaints of numbness and pain in her fingers. Plaintiff was placed on modified duty pending further evaluation.
8. Defendant-employer arranged for plaintiff to be seen by Dr. Andrea Stutesman on June 20, 1995. Dr. Stutesman examined plaintiff and nerve conduction studies were done on the right hand. The nerve conduction studies showed marked carpal tunnel syndrome. Dr. Stutesman also diagnosed pectoralis minor syndrome, a circulatory condition caused by tight pectoralis muscles, which can cause symptoms similar to carpal tunnel syndrome.
9. Dr. Stutesman was of the opinion that plaintiff's hand symptoms and condition were causally-related to plaintiff's weight lifting program, and so advised plaintiff. Dr. Stutesman's opinion is that plaintiff had carpal tunnel syndrome prior to her employment with defendant. While plaintiff's employment duties could have aggravated her pre-existing carpal tunnel syndrome, her weight lifting and use of birth control pills could also be aggravating factors. Likewise, plaintiff's developing pregnancy could aggravate her carpal tunnel syndrome.
10. Dr. Stutesman did not believe plaintiff's job involved the type of repetitive, forceful motion generally associated with the development of carpal tunnel syndrome. She was unable to give an opinion that plaintiff's job duties placed her at an increased risk of developing carpal tunnel syndrome as compared to the general public.
11. Although defendants paid for plaintiff's initial evaluation with Dr. Stutesman, a determination was subsequently made to deny the claim, and no additional medical and no compensation benefits were paid.
12. Plaintiff continued to work light duty until mid-August, 1985, at which time she went out on maternity leave. Plaintiff continued to be out of work on unpaid medical leave until March 13, 1996. At that time she was terminated effective February 2, 1996, pursuant to company policy, since her leave time exceeded the time period she had actually been working for defendants.
13. The greater weight of the evidence shows that plaintiff had pre-existing carpal tunnel syndrome, which was not symptomatic and did not interfere with her work for Defendant until about May 22, 1995. Several factors, including plaintiff's weight lifting program and her use of birth control pills, may have aggravated her carpal tunnel condition to the point she developed her symptoms.
14. The evidence fails to establish, by the greater weight, that plaintiff's job duties while in defendants' employment, were a significant contributing factor to the development of her carpal tunnel syndrome.
15. The evidence fails to establish, by the greater weight, that plaintiff's employment with defendants placed her at a greater risk of developing carpal tunnel syndrome compared to the general public not so exposed.
 ***********
Based upon the foregoing findings of fact, the full Commission concludes as follows:
 CONCLUSION OF LAW
Plaintiff has failed to prove, by the greater weight of the evidence, that she sustained a compensable occupational disease, carpal tunnel syndrome, as a result of her employment with defendant-employer. The evidence fails to establish that plaintiff's carpal tunnel syndrome was caused or aggravated by her job duties or that plaintiff's job duties exposed her to a greater risk of developing carpal tunnel syndrome, than the general public not so exposed. N.C.G.S. § 97-53-(13); Booker v. Duke MedicalCenter, 297 N.C. 458 (1979).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Under the law, plaintiff's claim must be and is hereby DENIED.
2. Each side shall pay their own costs, except that defendants are responsible for the expert witness fees previously approved.
 S/ ________________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/ ______________________ DIANNE C. SELLERS COMMISSIONER
DISSENTING:
S/ ______________________ THOMAS J. BOLCH COMMISSIONER